FILED
99 JUN -3 AM 9: 24
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

GUARANTY NATIONAL INSURANCE )
COMPANY,                     )
     Plaintiff;              )
                             )
-vs.-                        )   No. CV-97-P-0718-S
                             )
HOME OIL COMPANY, et al.,    )
     Defendants.             )

ENTERED
JUN 0 3 1999

## OPINION

The plaintiff's Motion for Summary Judgment and the defendants' Motion for Summary Judgment were considered at a prior motion docket. For the reasons expressed herein, Home Oil's motion is due to be denied and Guaranty National's motion is due to be granted.

### Facts

The plaintiff brought this action on March 21, 1997, seeking a declaration as to whether it had to indemnify or defend defendants Home Oil Company, Inc. (Home Oil) and James Quintero[1] in a lawsuit pending in the United States District Court for the Middle District of Alabama. The resolution of the motions for summary judgment depends on whether Home Oil's insurance policies with Guaranty National cover claims of employment discrimination.

Defendant Home Oil is an Alabama corporation that operates convenience store and gas station facilities. Tim Shirley is the president and former vice president of Home Oil. For several years prior to 1994, Home Oil had a general liability insurance policy and an umbrella policy through Federated. The Federated umbrella policy covered employment discrimination, harassment,

---

[1] The court has been informed that the plaintiffs in the underlying lawsuit have voluntarily dismissed their claims against James Quintero.



and wrongful termination, but not if intentionally committed.

In August and September 1994, Shirley engaged in discussions with John Ezekiel, an insurance agent employed by Jim Anderson & Company, to determine if Ezekiel could provide insurance comparable to that Home Oil had with Federated at a lower price. Shirley testified that Ezekiel told him that the policies would all be through Guaranty National and that intentional and unintentional acts would be covered. Ezekiel met with Shirley to present a coverage proposal. In addition to a general liability policy through Guaranty National and an umbrella policy through Great American Insurance Company, the proposal offered separate discrimination coverage through NAS Insurance Services for discrimination and sexual harassment claims as well as limited coverage for defense costs associated with those claims. Although Shirley did not read the proposal and explanations, a summary explanation of the umbrella policy listed discrimination among the policy exclusions.

Subsequently, Shirley questioned why Home Oil needed separate employment practices liability coverage. Shirley testified that Ezekiel later called him and represented that the umbrella policy would cover employment practices damages. In his affidavit, Ezekiel denies such a statement and claims that Shirley chose not to purchase separate employment practices coverage. Ezekiel agreed to provide a revised proposal increasing the umbrella policy from three million dollars to five million, excluding employment practices liability coverage, and providing discrimination coverage for defense costs only through NAS. Although the revised proposal and the policies were not yet available, Home Oil bound the new coverage, which was effective October 1, 1994 to October 1, 1995.

The following year, someone from Jim Anderson & Co. contacted Shirley concerning renewal of the policies. Jim Anderson presented a risk management survey and coverage proposal

to Home Oil for the 1995-96 coverage year. The proposal contained the same summary explanation of the umbrella coverages and exclusions as did the 1994-95 proposal. Home Oil renewed its policies, the only difference being that Guaranty National, and not Great American, issued the commercial umbrella policy. The same coverage was renewed for the 1996-97 policy year.

On September 4, 1996, current and former employees and rejected applicants[2] of Home Oil filed a complaint in the United States District Court for the Middle District of Alabama alleging three claims under Title VII, 42 U.S.C. § 1981, and state law. Count I alleges that Home Oil discriminated against African-American employees by, among other things, denying them opportunities to apply for promotions, depriving them of better work assignments, refusing to take applications from African-American persons, subjecting them to a racially hostile work environment authorized, ratified, and condoned by Home Oil, and retaliating against them for complaining of discriminatory treatment. Count II asserts that white employees were injured by Home Oil's alleged racist conduct and by the denial of a work environment free of racism. Count III alleges that defendant Quintero outrageously and intentionally inflicted emotional distress upon the African-American plaintiffs and that Home Oil authorized, ratified, and condoned his conduct. The plaintiffs sought declaratory and injunctive relief and compensatory and punitive damages.

Around the same time that the underlying lawsuit was filed, Home Oil attempted to obtain full discrimination coverage for the 1997-98 coverage year. Although NAS refused to issue coverage, Home Oil obtained full discrimination coverage from Evanston Insurance Company.

**Analysis**

I. The Umbrella Policy

---

[2] Two of the plaintiffs applied for positions with Home Oil but were denied employment.

To the extent that Home Oil claims that Guaranty National's commercial umbrella policy covers the allegations in the underlying lawsuit, the court notes the following language from the 1995-96 policy:[3]

> VII. Exclusions
> This insurance does not apply:
>     . . .
> N. To "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" that arises out of discrimination.
>     . . .
> S. To "Personal Injury" or "Property Damage" sustained or alleged to have been sustained by any person as a result of an offense directly or indirectly related to prospective employment, employment, continued or terminated employment (wrongful or otherwise) of such person by the "Named Insured" or any subsidiary thereof. This insurance likewise does not apply to providing a defense or reimbursement of expenses in connection therewith for any such sustained or alleged claims.

Thus, without considering whether the plaintiffs in the underlying action have alleged bodily or personal injury or property damage, the court finds that the umbrella policy clearly excludes claims of discrimination.

II. The General Liability Policy

Although the commercial general liability policies issued by Guaranty National to Home Oil do not specifically mention discrimination, several provisions are relevant to the pending motions. The policies provide:

> 1. Insuring agreement
>     a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.
>     . . .
>         b. This insurance applies to **bodily injury** and **property damage** only if:
>             (1) The **bodily injury** or **property damage** is caused by an

---

[3] The 1996-97 umbrella policy contains virtually identical language.

>       **occurrence** that takes place in the **coverage territory**; and
>       (2) The **bodily injury** or **property damage** occurs during the policy period.

. . .
 2. Exclusions
This insurance does not apply to:
>       a. **Bodily injury** or **property damage** expected or intended from the standpoint of the insured.

. . .
>       e. **Bodily injury** to:
>           (1) An employee of the insured arising out of and in the course of employment by the insured;

. . .
3. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .
9. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .
12. **Property damage** means:
>       a. Physical injury to tangible property, including all resulting loss of use of that property. . . .; or
>       b. Loss of use of tangible property that is not physically injured. . . .

Home Oil and Quintero argue that the claims in the underlying lawsuit fall under the general liability policy because the plaintiffs in the underlying lawsuit seek compensatory damages. Because compensatory damages may be recovered for mental anguish, and because mental anguish is included within the meaning of the terms "sickness" and "disease," the plaintiffs in the underlying action allege bodily injuries covered by the general liability policy. Although Guaranty National disputes the existence of bodily injury because the underlying plaintiffs did not allege mental anguish in their complaint, the court will assume, for purposes of this opinion, that covered injuries have been alleged.[4]

---

[4] The court also notes that, although not addressed at length by Home Oil, Guaranty National argues that the claims of the underlying plaintiffs are not "occurrences." Indeed, the claims alleged do not seem like "accidents" as "occurrence" is defined in the policy. However, for purposes of this ruling on the pending summary judgment motions,

Although Home Oil and Quintero next argue that the bodily injuries were neither expected nor intended, they do not address the exclusion for injury arising out of and in the course of employment. Even if Home Oil and Quintero can establish bodily injury, they have not shown why that exclusion should not apply. Consequently, the court finds that the claims made by the current and former employees are excluded from coverage under the general liability policy.

Because the claims of the two underlying plaintiffs who were not employees would not be excluded under the employment exclusion, the court must address Home Oil's argument that these plaintiffs' bodily injuries were neither expected nor intended from its standpoint, and are therefore covered under the general liability policy. With a few exceptions, Alabama courts construe the "expected or intended" exclusion to preclude coverage only when the insured subjectively intended or expected its action to cause injury.[5] However, the Alabama Supreme Court has held that disparate treatment claims, including those of sexual discrimination and retaliatory termination, are excluded from similar insurance coverage because "plaintiffs must establish that their employer acted with a discriminatory intent."[6] With respect to disparate treatment claims, the Alabama Supreme Court has not distinguished between intent to discriminate and intent to cause injury. As a result, this court concludes that to the extent the two non-employee plaintiffs can assert Title VII or § 1981 claims, those claims would be excluded from coverage under the "expected or intended" exclusion.

To the extent that the two non-employee plaintiffs join in the outrage claim against Quintero, their claims would be excluded from coverage because the complaint alleges that Quintero

---

the court will treat the underlying plaintiffs' claims as meeting the definition of "occurrence" under the policy.

[5] *See Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 603 (11th Cir. 1993); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925-26 (Ala. 1984).

[6] *Jackson County Hosp. v. Alabama Hosp. Ass'n Trust*, 619 So. 2d 1369, 1372 (Ala. 1993). *See also Jackson County Hosp. v. Alabama Hosp. Ass'n Trust*, 652 So. 2d 233, 235-36 (Ala. 1994).

intentionally inflicted emotional distress upon the plaintiffs. The plaintiffs in the underlying action also allege that Home Oil authorized, ratified, and/or condoned Quintero's conduct. Although some courts have found that claims premised on vicarious liability are not "expected or intended" because the plaintiff does not have to allege intent to cause injury in order to state a claim,[7] this court notes that Home Oil cannot be vicariously liable for Quintero's outrageous conduct in the absence of proof of Quintero's intent to inflict emotional distress.[8] Because a corporation acts through its agents, and because the plaintiffs would have to prove the elements of intentional infliction of emotional distress in order to hold Home Oil vicariously liable for its agent's tort, the court finds that an outrage claim by the nonemployee plaintiffs against Home Oil would be excluded from coverage.

III. Estoppel

In its motion for summary judgment, Home Oil argues that Guaranty National should be estopped from denying coverage based on policy exclusions in the umbrella policy because of the representations of Ezekiel. Home Oil contends that Ezekiel told Shirley that intentional and unintentional employment practices acts would be covered and that Home Oil did not need to purchase a separate employment practices liability policy. Shirley relied on these representations, did not read the insurance policies, and did not purchase the separate employment practices coverage that was included in the original proposal. In response, Guaranty National asserts that Shirley is a sophisticated businessman who should be held to be on notice of all of the provisions in the insurance policies. Guaranty National also claims that if Home Oil believed it had coverage under Guaranty National's policies for employment related practices, it would not have purchased separate

---

[7] *See Sphere Drake Ins. v. Shoney's, Inc.*, 923 F. Supp. 1481, 1492 (M.D. Ala. 1996).

[8] *See Potts v. BE&K Const. Co.*, 604 So. 2d 398, 400 (Ala. 1992) (to prove employer has ratified employee's sexual harassment of another, plaintiff must first prove underlying tortious conduct).

defense cost coverage from NAS.

The court finds that estoppel is not appropriate in this case. Home Oil has not shown that Ezekiel made a knowing misrepresentation. Even if Ezekiel and Shirley misunderstood each other during their oral conversations, Shirley could have discovered the deficiencies in coverage had he read the coverage summaries or the policies themselves.[9] To the extent he relied on oral statements made in 1994 for the initial coverage and for subsequent renewals, Shirley's reliance was not reasonable. As a result, the court considers the terms of the policies as they are written.

IV. Conclusion

For the reasons expressed above, the motion by Home Oil is due to be denied. Summary judgment is due to be entered finding that Guaranty National is not obligated to defend the claims in the underlying lawsuit.

Dated: June 3, 1999

Chief Judge Sam C. Pointer, Jr.

Service List:
  Mr. Mark S. Boardman
  Mr. Jason P. Tortorici
  Mr. Wesley S. Redmond
  Mr. Frank S. James, III
  Ms. Ann C. Robertson
  Mr. Maury Weiner
  Mr. Allen R. Trippeer
  Ms. Lisa W. Borden

---

[9] The exclusions in the 1994-95 Great American commercial umbrella policy should have alerted Shirley to potential problems. That insurance did not apply to any injury "[a]rising out of any: (1) Refusal to employ; (2) Termination of employment; (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions . . . ."